DECISION
{¶ 1} In this original action, relator, Vickie Wright, seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio, to vacate its order to the extent that temporary total disability ("TTD") compensation is denied for the period November 12, 2001 through April 20, 2004, and enter an amended order granting TTD for that period.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision that includes findings of fact and conclusions of law and recommended that this court deny the requested writ of mandamus. (Attached as Appendix A.) No objection has been filed to the magistrate's decision.
 {¶ 3} Pursuant to Civ.R. 53(E)(4), the court conducted a full review of the magistrate's decision. The court finds that there is no error of law or other defect upon the face of the decision. Therefore, this court adopts the magistrate's decision. The requested writ of mandamus is denied.
Writ of mandamus denied.
Klatt, P.J., and McGrath, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Vickie Wright, : Relator, : v. : No. 05AP-669 Industrial Commission of Ohio : (REGULAR CALENDAR) and Honda of America Mfg., Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 31, 2006 Thomas J. Marchese, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
Vorys, Sater, Seymour and Pease LLP, and Robert A. Minor,
for respondent Honda of America Manufacturing, Inc.
 IN MANDAMUS {¶ 4} In this original action, relator, Vickie Wright, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that temporary total disability ("TTD") compensation is denied for the period November 12, 2001 through April 20, 2004, and to enter an amended order granting TTD compensation for said period.
Findings of Fact:
 {¶ 5} 1. On December 12, 1989, relator sustained an industrial injury while employed as an assembly worker for respondent Honda of America Manufacturing, Inc. ("Honda"), a self-insured employer under Ohio's workers' compensation laws.
 {¶ 6} 2. The industrial claim was initially allowed for "trapezius muscle strain and myofascitis," and was assigned claim number L46050-22. Honda was ordered to pay TTD compensation from June 6 through June 26, 1990. Relator returned to work at Honda on June 27, 1990.
 {¶ 7} 3. According to a report dated October 24, 2002, from treating psychologist Cynthia B. Levy, Ph.D., relator has been treated "intermittently" by Dr. Levy since February 1999.
 {¶ 8} 4. In her October 24, 2002 report, Dr. Levy wrote:
 In October, 1999, while she was on prozac, xanax and tofranil, she was unable to function and I wrote her off work on short-term disability with Kemper. Her diagnoses were the following: 296.32 Major Depression, recurrent, moderate 308.30 Acute StresDisorder 300.81 Somatization Disorder The anxiety and somatization disorder were a result of her injuries at work. Her major depression was aggravated by the work injuries.
* * *
Ms[.] Wright is still suffering from dysthymia, depression and anxiety related to her injuries at Honda and the events stemming from these injuries. She has not been able to work and is completely unemployable.
 {¶ 9} 5. On February 19, 2003, relator moved for the recognition of additional claim allowances based upon Dr. Levy's report.
 {¶ 10} 6. Relator's motion prompted Honda to have relator examined by psychiatrist Jose A.A. Collares, M.D., on June 13, 2003. Dr. Collares wrote:
 {¶ 11} The claimant does experience multiple sources of pain throughout her body. The pain secondary to the left trapezius muscle tear is a significant portion of the pain that she experiences.
 {¶ 12} The claimant's current depressive disorder is an aggravation of a preexisting depressive disorder. The current depressive disorder is secondary to the chronic pain from the left trapezius muscle tear.
 {¶ 13} 7. On July 11, 2003, Dr. Collares wrote:
* * * The claimant does not qualify for a diagnosis of acute stress reaction.
* * * [S]he does not qualify for a diagnosis of somatization disorder.
* * *
It does continue to be my belief that the claimant suffers from aggravation of a pre-existing depressive disorder, and this depression is secondary to the chronic pain from her left trapezius shoulder tear that has been chronic and ongoing. * * *
 {¶ 14} 8. Following a September 30, 2003 hearing, a staff hearing officer ("SHO") issued an order additionally allowing the claim for "acute stress disorder and somatization disorder" based upon reports from Dr. Levy, and additionally allowing the claim for "aggravation of pre-existing depressive disorder" based upon reports from Dr. Collares.
 {¶ 15} 9. On October 27, 2003, Dr. Levy wrote:
Ms[.] Wright was diagnosed with acute stress disorder in 1999 at the time that she experienced deteriorating health and had to be put on short-term disability. This anxiety was a direct result of her work related injury and the chronic pain she suffered due to the injury. Her anxiety has continued at severe levels and is pervasive in her life. She is unable to go out in public without experiencing panic, shortness of breath, tingling in her arms, fear of what people will say or do to her, fear of being in places such as grocery stores, etc. In general, her perceptions of herself and other people have deteriorated to a general mistrust of being able to function.
Ms[.] Wright also suffers from somatization disorder under 300.81 undifferentiated somatoform disorder in which she has fatigue, loss of appetite, loss of sleep, gastrointestinal pain, pain in her extremities, and severe loss of memory and concentration. In addition, her physical complaints and resulting social and occupational impairment is severe and in excess of expected outcomes.
In addition to the above diagnoses, Ms[.] Wright continues to suffer from a depressive disorder which is recurrent and moderate.
I would like to stress that Ms[.] Wright's condition was deteriorating from 1999 to 2002 due to the levels of pain that she was experiencing; her inability to continue working; her isolation from friends, family and social situations; her severe loss of memory and functioning in adaptive behavior; and her feelings of hopelessness and helplessness.
Ms[.] Wright is temporarily and totally disabled from her employment at Honda as a result of these three conditions.
 {¶ 16} 10. On a C-84 dated November 3, 2003, Dr. Levy certified a period of TTD beginning February 18, 1999 to an estimated return-to-work date of February 1, 2004.
 {¶ 17} 11. On November 12, 2003, citing Dr. Levy's October 27, 2003 narrative report and November 3, 2003 C-84, relator moved for TTD compensation.
 {¶ 18} 12. On January 26, 2004, at Honda's request, relator was examined by psychologist Lee Howard, Ph.D. In his 15-page report, under the caption "Review of Records," Dr. Howard enumerates or identifies 28 documents or groups of documents that were "forwarded" to him for his review.
 {¶ 19} Among the items listed under "Review of Records," Dr. Levy's October 24, 2002 narrative report and Dr. Collares June 13 and July 11, 2003 reports are specifically identified. Item number 4 lists: "Dr. Levy temporary total forms." Item number 6 lists: "Dr. Levy records."
 {¶ 20} 13. In his January 26, 2004 report, Dr. Howard concludes:
There is no evidence of disability from work from a period of 2-18-99 through 2-1-04. This individual began psychotherapy in 1989 and it generally takes six to twelve months to bring about stabilization. By 1999 she had already completed ten years of psychological intervention. This does not even include her multiple use of psychotropics for many years. In any case, she would have been at maximum medical improvement many years prior to 1999. Thus, the C84 is clearly not supported. Any disability from 1999 through 2004 is being maintained by non-Industrial accident related factors as she would have had sufficient treatment to already address any of her accident symptoms by that late date.
* * *
This individual is not in need of any additional psychological or psychiatric intervention as it would relate to the Industrial accident in question. Those symptoms have basically resolved and multiple non-Industrial accident related factors appear to be the primary cause and/or maintaining factor of current psychopathology.
 {¶ 21} 14. Following a February 27, 2004 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation from November 12, 2001 through February 1, 2004, based upon reports from Dr. Levy. The order further states:
Dr. Howard's 01/26/2004 report was not found to be persuasive as his opinion that the injured worker has long since reached maximum medical improvement was predicated on the erroneous understanding that the injured worker has been in treatment for her depressive disorder since 1989 rather than 1999.
 {¶ 22} 15. Honda administratively appealed the DHO order of February 27, 2004.
 {¶ 23} 16. On April 16, 2004, Dr. Howard issued an addendum to his January 26, 2004 report:
Please note that the onset of treatment date of 1989 was provided by the claimant and not the examiner. It was simply recorded in the report as stated by her. I have a clinical note stating: ["]Dr. Levy x 1989-2003" if needed.
In any case, whether the date is 1989 or 1999 makes little difference in an opinion of MMI. The claimant has been on psychotropic medication for approximately five years or approximately 70 months. Previous research of the treatment of emotional disorders with psychotropic medications (refer to "Clinical significance of the NIMH treatment of Depression: Collaborative research program data", Ogles, Sawyer Lambert,Journal of Consulting and Clinical Psychology, 1995, Vol. 63, No. 2, 321-326.) would suggest that the claimant has had 17 to23 times the amount of treatment normally needed to bring about resolution of symptoms. If we use the apparently erroneous date provided by the claimant of 1989, that number is doubled, 34 to 46. It really matters little if the claimant has had twenty times the amount of treatment needed, or 40 times the amount of treatment needed, the same conclusion would be present that she is not going to demonstrate any more significant improvement. Also note that the dosage effects of psychotherapy research (see Consumer Reports, 1994 and 1995. See Howard, et.al., 1986 and 1994. See Seligman, 1995. See Lambert, et.al., 2001.) indicate that if there is not significant improvement after one year, there is a very low probability that there would be more significant improvement after that time with the same treatment approach. Also note that the claimant is post injury five years. Previous research on recovery from Industrial accidents (see McGill, C.M., 1968, "Industrial Back Problems-A Control Program",Journal of Occupational Medicine, 10, 174-178.) indicate that no more significant improvement will occur post injury approximately five years.
(Emphasis sic.)
 {¶ 24} 17. Following an April 20, 2004 hearing, an SHO issued an order stating:
The order of the District Hearing Officer, from the hearing dated 02/27/2004, is vacated.
Payment of temporary total compensation is denied for the requested period of 02/18/1999 to the 04/20/2004 date of this hearing. First, the period of 02/18/1999 to 11/11/2001 is barred by the two year statute of limitations, as the request for temporary total was not filed until 11/12/2003.
Second, the reports of Dr. [L]evy are not persuasive. In her C-84 dated 11/03/2003, she certifies over four years of "temporary" disability. There are virtually no office notes or explanation as to how this condition has remained "temporary" despite almost five years of treatment. The injured worker testified that her psychological condition has remained the same since she began seeing Dr. Levy in 1999. She also testified that she had taken anti-depressant medication continually since 1991. The injured worker's own testimony supports that her condition has not improved since 1999.
This evidence supports Dr. Howard's 01/26/2004 opinion that temporary total compensation is not warranted in this claim.
 {¶ 25} 18. Honda administratively appealed the SHO order of April 20, 2004 to the three-member commission. The commission decided to hear the appeal.
 {¶ 26} 19. Following a September 1, 2004 hearing, the commission issued an order stating:
* * * After further review and discussion, it is the decision of the Industrial Commission that the injured worker's appeal, filed 05/03/2004, is granted. The order of the Staff Hearing Officer, dated 04/20/2004, is modified, and the injured worker's motion for payment of temporary total disability compensation is denied.
The injured worker's application for temporary total disability compensation over the period 02/18/1999 through 04/20/2004 remains denied. For the period 02/18/1999 through 11/11/2001, the requested compensation is denied for the reason that no application was made within two years of the disability, as required under R.C. 4123.52. The date of filing of the motion for temporary total disability compensation is 11/12/2003. For the period 11/12/2001 through 04/20/2004, temporary total disability compensation is denied on the ground that the weight of the medical evidence supports the conclusion that the injured worker's disability was in a status of maximum medical improvement, and so was not temporary, throughout this period.
The finding that, medically, the injured worker was not temporarily and totally disabled over the period 11/12/2001 through 04/20/2004 is made in reliance upon the two reports of Lee Howard, Ph.D., dated 01/26/2004 and 04/16/2004, both of which are based upon his 01/26/2004 examination of the injured worker.
Dr. Howard's initial report outlines the psychological/psychiatric records he reviewed, the testing the injured worker underwent, and the face-to-face interview Dr. Howard conducted. These sources revealed a history that the injured worker has taken psychotropic medication in the form of, "some type of benzodiazepine since 1977." The injured worker reported to Dr. Howard that she had been hospitalized for psychiatric treatment at Mercy Mental Health, Marysville, and Riverside Hospital between 1990 and 2002, and had been on Tofranil and Prozac "for approximately four years."
The initial report from Dr. Howard also stated that the injured worker had been in treatment with Dr. Levy, a psychologist, since 1989, whereas the records shows that the injured worker first became a patient of Dr. Levy in 1999. Dr. Howard's initial report was found unpersuasive by the District Hearing Officer because of this perceived error in history.
Following receipt of the District Hearing Officer's order, the employer asked Dr. Howard to provide an addendum report based upon the correct history. Dr. Howard provided an addendum report on 04/16/2004. In that report, Dr. Howard stated that in originally reporting the history, he relied upon statements given to him by the injured worker. Dr. Howard also stated with respect to the injured worker's treatment with Dr. Levy that, "whether the date is 1989 or 1999 makes little difference in an opinion of MMI."
Dr. Howard noted in his 04/16/2004 addendum report that the injured worker had been treating with psychotropic medications for approximately five years, and discussed psychological journal articles indicating that if there is no significant improvement after one year of such treatment, there is a very low probability that there would be more significant improvement. Dr. Howard's addendum report supports the conclusions that he reached in his initial report.
In his initial report, Dr. Howard stated that, "the claimant has been at maximum medical improvement for a very long period of time." In this report, Dr. Howard also noted that psychotherapy "generally takes six to twelve months to bring about stabilization." Dr. Howard opined that the injured worker was not temporarily and totally disabled from any of the allowed psychological/psychiatric conditions for any part of the period commencing 11/12/2001. Dr. Howard's opinion that the injured worker was in a status of maximum medical improvement throughout the period commencing 11/12/2001 is based on his examination of the injured worker, a review of the medical findings contained in the record, and professional psychological/psychiatric literature. This opinion, in conjunction with the addendum report dated 04/16/2004, is found to be persuasive.
In light of the above, it is the order of the Industrial Commission to deny payment of temporary total disability compensation for the entirety of the requested period, 02/18/1999 through 04/20/2004. The denial of the requested compensation for the period up to 11/11/2001 is on jurisdictional grounds, as no application was made for this compensation within two years. The denial of the requested compensation for the period commencing 11/12/2001 is on medical grounds, and is based on a finding that the injured worker's disability was not temporary during any part of this period. This finding is based on the two reports of Dr. Howard referenced above.
 {¶ 27} 20. On June 27, 2005, relator, Vickie Wright, filed this mandamus action.
Conclusions of Law:
 {¶ 28} Dr. Howard opined retrospectively from his January 26, 2004 examination that the psychological claim allowances had reached maximum medical improvement ("MMI"). The issue here is whether Dr. Howard's retrospective opinion as to MMI constitutes some evidence upon which the commission can rely under the standard set forth in State ex rel. Bowie v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 458.
 {¶ 29} Finding that Dr. Howard's report meets the Bowie
standard, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 30} In Bowie, the commission denied the claimant's request for TTD compensation based in part on a report from Dr. Katz who examined the claimant on July 12, 1990, almost seven months after the industrial injury. In his report, Dr. Katz opined that the claimant "should [not] have been out of work at any time after" the date of injury. Id. at 459. Dr. Katz's retrospective opinion was based upon emergency room records on the date of injury and his examination of the claimant.
 {¶ 31} Concerned that Dr. Katz had not reviewed the reports of the claimant's treating chiropractor, Dr. McFadden, theBowie court wrote:
* * * In this instance, the conspicuous reference to the emergency room reports coupled with the equally conspicuous lack of reference to Dr. McFadden's reports suggests to us that Dr. Katz may have overlooked the latter.
Id. at 460.
 {¶ 32} The Bowie court issued a writ of mandamus returning the cause to the commission for its further consideration of the compensation request after removal of Dr. Katz's report from further evidentiary consideration. The Bowie court explains the law that underpins its decision:
There are parallels between an examining doctor who offers a retroactive opinion and a doctor who renders an opinion as to a claimant's current status without examination. The evidentiary acceptability of the latter is long-settled, having been equated to an expert's response to a hypothetical question. State exrel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55 * * *;State ex rel. Hughes v. Goodyear Tire Rubber Co. (1986),26 Ohio St.3d 71 * * *; State ex rel. Lampkins v. Dayton Malleable,Inc. (1989), 45 Ohio St.3d 14[.] * * *
As in the case of a non-examining physician, however, certain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time. * * *
Id. at 460.
 {¶ 33} It should be further noted that under the so-calledWallace rule, State ex rel. Wallace v. Indus. Comm. (1979),57 Ohio St.2d 55, the nonexamining physician is required to accept the findings of the examining physician but not the opinion drawn therefrom. State ex rel. Consolidation Coal Co. v.Indus. Comm. (1997), 78 Ohio St.3d 176, 179.
 {¶ 34} Here, relator argues that Dr. Howard's retrospective opinion fails to meet the Bowie standard because, allegedly, "nowhere in the report is there an indication that Dr. Howard expressly accepted the medical findings generated by examining physicians during the relevant period of time." (Relator's brief, at 6.)
 {¶ 35} Relator's argument suggests that Dr. Howard was required under Bowie to expressly accept the medical findings of the examining physicians. This magistrate disagrees.
 {¶ 36} In State ex rel. Lampkins v. Dayton Malleable, Inc.
(1989), 45 Ohio St.3d 14, the court agreed with the appellant that the requirement of express acceptance under the Wallace
rule had been relaxed. The Lampkins court held that "even under an implicit acceptance analysis," the two medical reports at issue were deficient. Id. at 16.
 {¶ 37} Here, in order to render a valid retrospective opinion on MMI, Dr. Howard was required under Bowie to at least implicitly accept the factual findings of the doctors who examined relator during the relevant period for the psychological claim allowances.
 {¶ 38} Only the reports of Drs. Collares and Levy appear to be relevant to Dr. Howard's retrospective opinion. Here, relator asserts that Dr. Howard did not review or accept the October 27, 2003 report of Dr. Levy ostensibly because that report is not specifically enumerated in Dr. Howard's report.
 {¶ 39} In the magistrate's view, that Dr. Howard did not specifically enumerate Dr. Levy's October 27, 2003 report as one that he reviewed does not require this court to conclude that Dr. Howard failed to review it. As item number 6 indicates, Dr. Howard reviewed "Dr. Levy records." Certainly, the October 27, 2003 report is encompassed by that description. Relator has no evidence that the October 27, 2003 report was not among Dr. Levy's records. There is no requirement that Dr. Howard enumerate or separately identify every document he reviewed. Relator has not shown that the October 27, 2003 report was not reviewed by Dr. Howard.
 {¶ 40} Moreover, it is also the magistrate's view that implicit acceptance of the medical findings of the relevant examining doctors can be inferred from Dr. Howard's enumeration of the medical records under the heading "Review of Records."
 {¶ 41} Because Dr. Howard's retrospective opinion on the question of MMI meets the Bowie standard, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE